# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **HIBBETT PATIENT CARE, LLC,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 16-0231-WS-C |
| ) | |
| **PHARMACISTS MUTUAL** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on Plaintiffs' Motion to Strike Opinions of Defendant's Experts Joseph Cowan and Michael T. Ryan (doc. 51). The Motion has been briefed and is now ripe for disposition.[1]

**I.     Background.**

Plaintiffs, Hibbett Patient Care, LLC and Hibbett Patient Care II, LLC (collectively, "Hibbett"), brought this action against their general liability insurer, Pharmacists Mutual Insurance Company ("PMIC"), asserting claims of breach of insurance contract, bad faith failure to investigate, and bad faith denial of claim. All such claims arise from PMIC's denial of coverage, including defense and indemnification, to Hibbett with respect to an underlying lawsuit styled *Hibbett Sporting Goods, Inc. et al. v. Hibbett Patient Care, LLC, et al.*, filed in the U.S. District Court for the Northern District of Alabama (the "*Hibbett Sporting Goods* case").[2]

---

[1] Defendant has requested oral argument on the Motion, citing the complexity and importance of the issues. The Local Rules provide that "[i]n its discretion, the Court may rule on any motion without oral argument." Civil L.R. 7(h). Upon careful consideration of the parties' written submissions, the Court determines that oral argument is unlikely to be beneficial; therefore, defendant's request for oral argument is **denied**.

[2] In that action, Hibbett Sporting Goods charged Hibbett with "Lanham Act violations, common-law trademark infringement, trademark dilution arising under Alabama law, and other state-law claims," and indicated that it sought "declaratory and equitable relief for Defendants' actual and threatened infringement of Plaintiffs' trademarks, service marks, and other intellectual property." (Doc. 1, Exh. C, ¶¶ 11-12.)

Hibbett maintains that the centerpiece of its action against PMIC is "whether PMIC owed Plaintiffs a defense for the claims asserted" in the *Hibbett Sporting Goods* case. (Doc. 51, at 1-2.) To address that issue, PMIC has designated two attorneys, Joseph Cowan and Michael Ryan, as expert witnesses. Cowan's report reflects that he is a partner at the Hand Arendall firm in Birmingham, Alabama, and that he intends to offer the following expert opinions, among others: (i) PMIC "acted reasonably and properly investigated the claim" prior to denying it; (ii) PMIC reasonably relied on Ryan's analysis in denying Hibbett's claim for defense and indemnity; (iii) none of the information provided to PMIC triggered a duty to defend; (iv) Hibbett's coverage arguments are "incorrect or inapplicable;" (v) PMIC's coverage counsel's analysis "was fair, competent and correct;" (vi) the *Hibbett Sporting Goods* complaint did not assert a trade dress claim; (v) the policy's trademark exclusion (exclusion m) excludes all claims arising out of allegations of trademark violations; (vii) a summary/synopsis of decisional authority on certain legal issues; (viii) opinions as to how Alabama courts would decide certain purely legal questions; and (ix) opinions as to the customary fees charged by Alabama firms in the Birmingham area for intellectual property litigation. (Doc. 51, Exh. 1, at Exh. A.) As for Ryan, he is a Michigan lawyer who served as coverage counsel for PMIC on the Hibbett claim and who authored the May 2014 letter to Hibbett denying all defense and indemnification coverage for the *Hibbett Sporting Goods* action. (Doc. 51, Exh. 1, at Exh. B.) Defendant has not submitted a separate expert report for Ryan; however, it has identified him as an expert witness in this matter and has explained that his May 2014 letters "regarding his coverage opinion … contain an outline of his opinions and the bases therefor." (Doc. 51, Exh. 1, at 2.) Thus, it appears that PMIC intends to call Ryan at trial to testify as an expert to the opinions set forth in the denial-of-coverage letter he wrote to Hibbett in his capacity as PMIC's coverage counsel.

Plaintiffs now request that the opinions of both Cowan and Ryan be excluded on four separate grounds, to-wit: their opinions are improper legal conclusions, they do not satisfy *Daubert* reliability principles, Ryan's expert opinions amount to unauthorized practice of law in Alabama, and PMIC is barred from contesting Hibbett's damages.

**II.     Analysis.**

    *A.     Objections to Cowan Expert Report.*

Beginning with the Cowan report, Hibbett's initial objection is that Cowan's opinions are inadmissible legal conclusions. The Eleventh Circuit has remarked that "the law in this circuit

pertaining to the admissibility of an expert's opinion couched in legal terms is not crystal clear." *Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989) (citation omitted). Nonetheless, there are several well-defined guideposts to shape the analysis. The Federal Rules of Evidence specify that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rule 704(a), Fed.R.Evid. That said, the general rule is that "testifying experts may not offer legal conclusions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).[3] After all, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1213 (D.C. Cir. 1997); *see also Carrier Exp., Inc. v. Home Indem. Co.*, 860 F. Supp. 1465, 1476 (N.D. Ala. 1994) ("Professor Hamilton's expected testimony was a dissertation of the law as it related to this case. … As such, this testimony was properly excluded. … The court instructs the jury regarding the applicable law; the witnesses do not.").

In light of these principles, expert opinions are inadmissible to the extent that they contain legal conclusions regarding the expert's interpretation of contracts, insurance policies, or other legal documents.[4] The Eleventh Circuit's decision in *Montgomery v. Aetna Cas. & Sur.*

---

[3] *See also United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("courts must remain vigilant against the admission of legal conclusions"); *R.W. v. Board of Regents of the University System of Georgia*, 114 F. Supp.3d 1260, 1274 (N.D. Ga. 2015) ("As a general principle, testifying experts may not offer legal conclusions. … Based on this general principle, all witnesses are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct.") (citations and internal quotation marks omitted); *Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp.3d 1343, 1365 (N.D. Ga. 2014) ("An expert may not testify regarding the legal implications of conduct because the court must be the jury's only source of law."); *Domercant v. State Farm Fire and Cas. Co.*, 2013 WL 11904719, *2 (N.D. Ga. May 15, 2013) ("the court will not permit a party to cloak its legal arguments in the garb of an expert witness"); *Royal Marco Point 1 Condominium Ass'n v. QBE Ins. Corp.*, 2011 WL 470561, *4 (M.D. Fla. Feb. 2, 2011) ("an expert witness may not offer a legal conclusion").

[4] *See, e.g., Herman v. Seaworld Parks & Entertainment, Inc.*, --- F.R.D. ----, 2017 WL 1304302, *5 (M.D. Fla. Mar. 10, 2017) ("Courts regularly exclude expert opinions that opine on the interpretation of written contracts."); *North American Specialty Ins. Co. v. Wells*, 2013 WL 4482455, *2 (S.D. Ga. Aug. 19, 2013) ("[C]ourts within the Eleventh Circuit have excluded expert testimony where it is simply a reiteration or recasting of … parties' interpretation of a contract.").

*Co.*, 898 F.2d 1537 (11th Cir. 1990), is instructive. In *Montgomery*, an insured sued his insurance carrier for breaching its contractual duty to defend by not hiring tax counsel to represent the insured in the underlying suit. The insured offered expert testimony "that Aetna had a duty under the policy to provide counsel for the tax matter." *Id.* at 1540. The panel explained that an expert may not "merely tell the jury what result to reach," and construed the proffered expert opinion to be "a legal conclusion, and therefore should not have been admitted. The district court abused its discretion by allowing [the expert] to testify about the scope of Aetna's duty under the policy." *Id.* at 1541 (footnote omitted). District courts in this circuit have reached similar conclusions in analogous circumstances. *See FNB Bank v. Park Nat'l Corp.*, 996 F. Supp.2d 1187, 1192 (S.D. Ala. 2014) (excluding expert testimony that a "construction loan agreement requires an increase in construction costs to be borne by the developer" and "that the plaintiff breached its contractual duty by failing to monitor the loan" where it is improper for witness to posit "as an expert, an interpretation of what the contract requires"); *Rosen v. Protective Life Ins. Co.*, 817 F. Supp.2d 1357, 1385 (N.D. Ga. 2011) ("The proposed testimony seeks to displace the role of the Court by offering Dr. Reavis's opinion on the scope of the obligations described by the unambiguous language of the Settlement Agreement, which is not allowable under the Rules of Evidence."); *North American Specialty Ins. Co. v. Wells*, 2013 WL 4482455, *3 (S.D. Ga. Aug. 19, 2013) (excluding expert's "legal conclusions regarding the interpretation of the insurance policy terms," and particularly his opinion that the insurer "has a duty to provide coverage for the event in question," where such opinion "is nothing more than a reiteration or recasting of Defendant Wells's interpretation of the insurance contract").

Notwithstanding the foregoing, it is proper for a qualified expert witness to testify about insurance industry practices and procedures. *See, e.g., Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp.3d 1343, 1366 (N.D. Ga. 2014) ("[B]ecause the average juror is not likely to be familiar with the practices and procedures involved in insurance claims handling, expert testimony on these matters is admissible to assist the trier of fact. … An insurance expert may testify regarding what duties are owed by an insurance company during the claims handling process and whether the actions of the insurance company complied with those duties without offering improper legal conclusions."); *Royal Marco Point 1 Condominium Ass'n v. QBE Ins. Corp.*, 2011 WL 470561, *4 (M.D. Fla. Feb. 2, 2011) (allowing expert opinions comparing defendant insurer's claims

handling practices to what is standard and typical in the industry).[5] And an expert may properly testify as to facts that relate to a legal standard, so long as he or she does not offer opinions as to whether that legal standard has been met. *See, e.g., Cordoves v. Miami-Dade County*, 104 F. Supp.3d 1350, 1365 (S.D. Fla. 2015) ("[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."); *Camacho*, 13 F. Supp.3d at 1366 (citing as an example of proper testimony an attorney expert opinion that a statement in a prospectus was standard language, because such information helped the jury evaluate defendants' scienter).

In large part, Cowan's proffered expert opinions "merely tell the jury what result to reach" and recast PMIC's own interpretation of the relevant documents. He interprets various aspects of the insurance policy as well as the *Hibbett Sporting Goods* complaint.[6] He opines that PMIC's interpretations are correct and that Hibbett's interpretations are incorrect.[7] In this manner, Cowan simply reiterates PMIC's interpretations of what the *Hibbett Sporting Goods* complaint means and what the insurance policy's various coverages and exclusions require. Such legal conclusions are unhelpful to the jury and are inadmissible. *See Cook*, 402 F.3d at

---

[5] The one case cited by PMIC on this issue falls neatly within this category. In *Acceptance Ins. Co. v. Brown*, 832 So.2d 1 (Ala. 2001), the Alabama Supreme Court noted that an attorney specializing in insurance-coverage matters had offered an opinion that "industry practice required the insurer to seek a coverage opinion from an attorney before denying Gloria Brown a defense." *Id.* at 10. Far from expressing legal conclusions about policy interpretation, the attorney-expert in *Brown* merely testified about industry practice, which is an entirely proper and permissible subject for expert testimony.

[6] By way of example, Cowan offers opinions as to what he says "the plain meaning of the policy" is with respect to trade dress. (Cowan Report (doc. 51, Exh. 1 at Exh. A), at 7.) He states his opinion as to what the "unfair competition and palming off claims" in the *Hibbett Sports* complaint do or do not allege. (*Id.* at 7.) He talks about types of claims and allegations that he says are "plainly" and "unambiguously" excluded under the policy. (*Id.* at 8, 10.)

[7] For example, Cowan examined a letter from David Gauntlet, a Hibbett attorney seeking reconsideration of PMIC's coverage decision. Based on that review, Cowan would testify that, "in my opinion the argument provided by Mr. Gauntlet is incorrect or inapplicable" as to his interpretation of the *Hibbett Sporting Goods* complaint and "[i]t is also my opinion that Mr. Gauntlet's argument for coverage is incorrect." (Cowan Report, at 4.) Cowan would also testify that "it is my opinion that Mr. Ryan's analysis was fair, competent and correct." (*Id.*)

1111 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citations omitted). Cowan's expert report is also replete with analysis of what he believes applicable law says (including lengthy citations to published decisions from other jurisdictions), and his repeated forecasts that, "[i]n my opinion, an Alabama court deciding these issues would reach the same conclusion." (Cowan Report, at 5, 7, 10.) Such a dissertation on the law and how the witness thinks Alabama courts would decide certain legal questions improperly invades the province of this Court. Witnesses do not instruct juries on the law. Courts do. These aspects of the Cowan report are not proper expert opinions for trial.

However, several aspects of the Cowan report do not simply parrot PMIC's interpretation of the policy and the *Hibbett Sporting Goods* complaint, and do not invade the province of the Court by instructing the jury as to the law. In particular, Cowan's report includes opinions concerning PMIC's claims handling procedures, such as where he opines that PMIC "acted reasonably and properly investigated the claim by requesting information from [Hibbett] in addition to the [*Hibbett Sporting Goods*] Complaint and obtaining a coverage opinion from competent legal counsel prior to denying the claim." (Cowan Report, at 3.) As noted by the authorities cited *supra*, expert testimony may permissibly be used to assist the jury in understanding insurance claims handling procedures. The Court notes that Hibbett has raised a *Daubert* objection; however, nothing in Hibbett's *Daubert* analysis would impugn the reliability of this aspect of Cowan's report. Accordingly, the Motion to Strike is **denied** insofar as it would preclude Cowan from offering expert opinions as to the reasonableness and thoroughness of PMIC's investigation and claims handling procedures utilized in this case, relative to standard industry practices.

Another portion of Cowan's expert report that does not run afoul of the proscription against legal conclusions and telling the jury what result to reach is the section in which he offers opinions as to the customary fees charged by proficient lawyers at Alabama firms for intellectual property litigation in the Birmingham legal market. (Cowan Report, at 11.) PMIC apparently intends to use these opinions to show that the more than $160,000 in legal fees incurred by Hibbett in defending the *Hibbett Sporting Goods* action are excessive and unreasonable, such that any legal fees awarded to Hibbett as damages herein should be discounted to reflect customary rates in the appropriate legal market. In its Motion to Strike, Hibbett insists that

PMIC "is barred from contesting Plaintiffs' damages" (doc. 51, at 6); however, the authorities it cites do not support that proposition. Where a party seeks recovery of attorney's fees for a breach of contract claim, Alabama law imputes a reasonableness limitation to the resulting fee award, as a matter of law.[8] And Alabama law imposes a duty to mitigate damages on an aggrieved party in the breach-of-contract context. *See Whitney Bank v. Point Clear Development, LLC*, 2012 WL 2277597, *3 (S.D. Ala. June 18, 2012) ("As a general matter, Alabama courts have recognized a duty to mitigate in the breach of contract context."); *see also Wells Fargo Bank, N.A. v. Trotman*, 940 F. Supp.2d 1359, 1368 (M.D. Ala. 2013) (similar). In light of these well-entrenched legal principles, and movants' failure to identify any authority supporting their proposition, the Court does not find that the legal fees accrued by an insured in securing a defense following an insurer's breach of contract are unassailable and are immune from any reasonableness inquiries.[9] On this showing, Cowan will not be precluded from testifying about the going rates for comparable legal services in the relevant legal market.

### B. *Objections to Ryan Expert Report.*

As to Michael Ryan, Hibbett reiterates its objection to expert testimony concerning legal conclusions. In the Court's view, however, Ryan is not similarly situated to Cowan on this issue. Here is why: Ryan's "expert report" consists of the denial-of-coverage letter he wrote to Hibbett on PMIC's behalf in May 2014. That letter identifies Ryan as "coverage counsel for the Pharmacists Mutual Insurance Company," states that PMIC "now denies all defense and

---

[8] *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala. Civ. App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation."); *Branch Banking and Trust Co. v. Howard*, 2013 WL 951652, *6 (S.D. Ala. Mar. 8, 2013) ("Alabama law imposes a reasonableness constraint on all fee-shifting contracts, as a matter of public policy."); *Whitney Bank v. Point Clear Development, LLC*, 2012 WL 2277597, *7 n.11 (S.D. Ala. June 18, 2012) ("To be recoverable under Alabama law, the attorney's fees must be 'reasonable.'").

[9] To hold otherwise would be to provide no check, no limits, and no boundaries of any kind on the legal fees accrued by an insured in defending itself after the insurer declines to provide it with a defense. It would mean that an insured could go on a reckless, irresponsible, profligate spending spree in the underlying litigation, yet the insurer would remain on the hook for the full amount and would be helpless to challenge it. Such a result would be incompatible with the sound public policy underlying the Alabama principles of mitigation of damages and recovery of only reasonable fees, as discussed *supra*.

indemnification coverage for this claim," and sets forth in some detail the grounds for that denial-of-coverage decision. (Doc. 51, Exh. 1 at Exh. B.) Unlike Cowan, Ryan has not been retained by PMIC to offer a *post hoc* justification for the challenged coverage decision; rather, he was the lawyer who worked with PMIC to make that coverage decision in the first place. Viewed in its proper context, then, the Ryan letter is not an expert report at all, and Ryan is not testifying as an expert; rather, Ryan's statements regarding the contents of the May 2014 letter and the reasons for PMIC's denial of the claim are fact-witness testimony. Particularly given the bad-faith denial of coverage claim interposed by Hibbett, critical issues joined for trial in this case include not only what actions PMIC took but <u>why it took them</u>. If Ryan's May 2014 letter were excluded and he were precluded from testifying about it, then PMIC would be effectively prevented from explaining its coverage decision to the jury. The result of the evidentiary ruling sought by Hibbett is that PMIC would be stripped of its ability to defend against the bad faith claims at all. PMIC must be allowed to tell its story at trial, and Ryan (who, again, acted as PMIC's coverage counsel in this matter) is the proper fact witness to tell that story, explaining the analytical steps PMIC took, the results it reached, and the reasons for those decisions. This is fact, not expert, testimony that bears directly on Hibbett's bad faith claim. *See, e.g., State Farm Fire and Cas. Co. v. Brechbill*, 144 So.3d 248, 258 (Ala. 2013) ("Of course, if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith.") (citation and emphasis omitted); *Coleman v. Unum Group Corp.*, 207 F. Supp.3d 1281, 1284 (S.D. Ala. 2016) ("the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim") (citation omitted).

Next, Hibbett challenges Ryan's opinions as failing to satisfy *Daubert* reliability standards.[10] This argument is unpersuasive because, as noted, Ryan is testifying as a fact

---

[10] The Federal Rules of Evidence "require[] expert scientific evidence to be both reliable and relevant pursuant to Rule 702," such that it "appropriately assists the trier of fact." *United States v. Henderson*, 409 F.3d 1293, 1302 (11th Cir. 2005). In that regard, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). "In determining the admissibility of expert testimony under Rule 702, a district court considers whether (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is (Continued)

witness, not an expert witness. At any rate, even if Ryan were testifying as an expert, the reliability objections posited by Hibbett would go to the testimony's weight rather than its admissibility. In particular, Hibbett posits that Ryan's deposition testimony contradicts his written report (*i.e.*, the denial-of-coverage letter) in multiple respects; however, each of the purported "contradictions" either is not a fundamental inconsistency at all, or is a discrepancy that the witness may be able to harmonize.[11] Even in the aftermath of *Daubert*, it remains true that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld v. Oceana Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citations omitted). The purported infirmities identified by Hibbett may be fertile ground for cross-examination of Ryan, but they do not fairly implicate *Daubert* gatekeeping principles.

Finally, Hibbett objects to Ryan testifying at trial on the grounds that he is a Michigan lawyer who "is not licensed to practice law in the State of Alabama." (Doc. 51, at 6.) Hibbett's position is that Ryan's appearance and testimony at trial in this case would be tantamount to "practicing law in the State of Alabama." (*Id.*) Plaintiffs cite no authority for the dubious

---

sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Douglas*, 489 F.3d 1117, 1124-25 (11th Cir. 2007).

[11] For example, Hibbett argues that Ryan acknowledged in his deposition that Alabama law and Eleventh Circuit law control, yet his coverage letter failed to cite Alabama or Eleventh Circuit authority. (Doc. 51, at 4.) That is not a fundamental contradiction, particularly if (as PMIC represents) Ryan researched Alabama law in formulating the opinions expressed in that letter. Hibbett also insists that Ryan testified in his deposition that he relied <u>solely</u> on the intellectual property exclusion as a basis for denying coverage, whereas his coverage letter discusses multiple other exclusions (doc. 51, at 4); however, the cited deposition excerpt contains no such limiting statement. And Hibbett leans on Ryan's testimony that "if this Complaint is construed to assert a trade dress claim, there was a duty to defend it and I was wrong." (Doc. 51, Exh. 3, at 51.) Hibbett says "it is undisputed that Count IV of the [*Hibbett Sporting Goods*] Complaint asserts … a claim for trade dress infringement." (Doc. 51, at 4-5.) In fact, it appears to be hotly contested whether the *Hibbett Sporting Goods* Complaint implicates a duty to defend based on a claim for trade dress infringement. Whatever else may be said about Hibbett's identified "contradictions," they do not render Ryan's opinions so unreliable as to warrant *Daubert* gatekeeping exclusion.

proposition that a lawyer licensed to practice in one state cannot testify in a different state about certain legal conclusions he has reached. The Court is aware of none. Even if Hibbett were correct that Ryan's testimony at this trial amounts to the practice of law in Alabama, the appropriate remedy would not be wholesale exclusion of his testimony, but the ministerial action of having the witness complete a *pro hac vice* application and submit it to the Clerk of Court. The Court will not devote further attention to this baseless objection.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiffs' Motion to Strike the Opinions of Defendant's Experts Joseph Cowan and Michael T. Ryan (doc. 51) is **granted in part**, and **denied in part**;
2. The Motion to Strike is **denied** as to the portions of Cowan's expert report opining as to PMIC's claims handling practices and procedures, and as to customary and applicable rates for legal services, but is in all other respects **granted** as to Cowan; and
3. The Motion to Strike is **denied** as to Ryan.

DONE and ORDERED this 12th day of May, 2017.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE